**In re Anne DEMP, Debtor.**

**Anne DEMP, Plaintiff,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Defendant.**

**Bankruptcy No. 82–01411K.
Adv. No. 82–1097K.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Aug. 5, 1982.

Henry J. Sommer, Philadelphia, Pa., for plaintiff/debtor.

T. H. Maher Cornell, Philadelphia, Pa., for defendant.

Suzanne Cohen, Philadelphia, Pa., trustee.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case comes before the Court on a complaint filed by the debtor against the Philadelphia Electric Company (hereinafter referred to as PECO). The debtor requests the Court to enjoin PECO from terminating her electrical service and a declaratory judgment to serve as guidance in future similar cases. At the hearing, counsel for PECO joined in the latter request. The Court, however, is not willing to render a sweeping advisory opinion. In the case *sub judice*, however, the Court will enter an appropriate Order denying PECO's demand for a security deposit and enjoining PECO from terminating electric service for failure to provide a deposit.[1]

The facts of this case are uncomplicated and undisputed. Ms. Demp filed a petition for relief under Chapter 7 of the Bankruptcy Code. At the time of the filing of the petition, she was current in her payments to PECO. The utility company, nevertheless, demanded a deposit pursuant to § 366 of the Bankruptcy Code.[2] The debtor objected

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Section 366 states:
(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due. (b) Such utility may alter, refuse, or discontinue service if neither the trustee or the debtor, within 20 days after the order for relief, furnishes adequate assurance of pay-

to the payment of such a deposit when she was completely up-to-date on her electric bill and had every intention of continuing to pay. Although PECO reduced the amount of their demand, they continued to require a deposit. The debtor thereupon filed the instant complaint.

Counsel for the debtor cited the Court to the case of *In re Coury et al.*, Bky. No. 81–3456 (slip op. Bankr.W.D.Pa.1982) issued by the Honorable Joseph L. Cosetti. Counsel urges the Court to rule against PECO on the same basis. In construing § 366 to determine when a deposit may be demanded, Judge Cosetti stated that:

> Section 366(b) can only be read in conjunction with Section 366(a). Section 366(a) states that a utility can only discriminate against a debtor who has defaulted prior to filing pursuant to Section 366(b); that is, by demanding security. The utility cannot read Section 366(b) as giving rights to security if there has been no default.

*In re Coury, supra,* at p. 3. This Court agrees with the reasoning and conclusion of the *Coury* case.

This Court also finds a further basis for ruling against PECO. Pursuant to § 366(b), the utility may only terminate service if the debtor does not provide " . . . adequate assurance of payment, in the form of a deposit or other security . . . ."[3] In such a case such as this, where the debtor has a history of prompt and complete payment, in addition to being completely current in the prepetition utility payments, a cash deposit would be unnecessary. The Court finds that both the debtor's past history and the post-petition remedies available to PECO constitute adequate assurance that the debtor will continue to pay for services as billed. Section 366 of the Code does not prevent the utility from exercising any rights it may have in regard to post-petition defaults.

The utility, however, correctly notes that whenever a bankruptcy petition is filed, there will always be a portion of the service period for which service has been rendered but for which the debtor has not been billed. The bill for this period, in all probability, would not be very large in a consumer case. Ms. Demp's average monthly bill is only $8.00. The Court finds the amount involved to be *de minimis*. Any default of the debtor would permit PECO to take appropriate action.

---

ment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the deposit or other security

necessary to provide adequate assurance of payment.

3. 11 U.S.C. § 366(b).